ARMSTRONG, Judge.
Plaintiff, Patricia K. Rucker, claims the trial court erred in affirming the order of the Department of Public Safety and Corrections which suspended her driver’s license for a period of 180 days based upon her refusal to submit to a chemical test for intoxication. We disagree with her contentions and, therefore, affirm the judgment of the lower court.
In the early morning hours of May 15, 1990, Officer John Duzac, a patrolman assigned to the DWI division of NOPD, was driving east on St. Charles Avenue. He was in the left lane and travelling near Jackson Avenue towards downtown when he observed Rucker’s vehicle ahead of him. Her vehicle was also in the left lane, near the neutral ground, and had a truck in front of it. She attempted to drive around the truck by changing lanes. However, a fast moving cab was in the right lane. Both the cab driver and Rucker took evasive action, with Rucker returning to the left lane. When the vehicles stopped at a red light at Felicity Street, Officer Duzac drove around the three vehicles by using the right turn lane, coming out in front of the vehicles on St. Charles Avenue.
Officer Duzac pulled over the truck, the cab and Rucker’s vehicle on the downtown side of the intersection of Felicity and St. Charles. After talking to their drivers, he let both the cab and truck depart. He detained Rucker, however, because he detected a strong odor of intoxicating beverages on her breath.
Officer Duzac had Rucker exit her vehicle. He then had her perform the standardized, national Field Sobriety Test which she failed. The test consisted of 1) the horizontal gaze mystagmus test (she had 4 of the 6 signs), 2) the walk and turn test (she stopped to steady herself, lost her balance while turning, failed to touch toe to heal as instructed, lost her balance while walking and took steps off line), 3) the one leg stand test (a divided attention test in which she swayed while balancing, used her arms to balance herself and put her foot down more than once) and 4) the standard ABC test (she recited the alphabet out of order). He, therefore, placed her under arrest for being in actual physical control of a motor vehicle upon a public highway in Orleans Parish while under the influence of *1261 alcoholic beverages.[1]
Enroute to the station at 1700 Moss Street, Officer Duzac informed Rucker of her Miranda Rights. Upon reaching the station, he read to and gave her the form captioned “Rights Relating to Chemical Test for Intoxication,” circling section “A. 1” which informs the reader that one of the consequences of refusing to submit to the chemical test (Intoxilyzer 5000), if it is a first refusal, is suspension of their driver’s license for a period of 180 days. He also circled section “B. 2” which informs the reader that if the test is conducted and its results indicate a blood alcohol concentration of .10 percent, for a first offense, their license shall be suspended for a period of 90 days. Rucker would not sign the form. Consequently, Officer Duzac certified on the form that she had been advised of all information on the form and she did not sign because she refused.
Officer Duzac prepared the Intoxilyzer 5000 machine. He inserted a form personalized for Rucker and performed an air blank diagnostic test, receiving results of “.000,” to ascertain that the machine’s tubes were not blocked and/or that no residue of alcohol remained in the machine. He then handed Rucker the tube/mouth piece, but she adamantly refused to accept it. Consequently, he ran the subject test without Rucker blowing into the mouth piece and the test printout showed the results were “. — ” at 2:40 a.m.[2] He concluded the session by running another air blank diagnostic test, receiving results of “.000.”
Due to her refusal to take the test, Ruck-er was informed her driving privileges were under suspension for a period of 180 days and she was issued a temporary license. She subsequently sought an administrative hearing before a hearing officer of the Department of Public Safety and Corrections. Following a hearing on July 16, 1990, the suspension of Rucker’s license was affirmed, but her temporary privileges were extended through July 30, 1990.
On July 31,1990, Rucker filed in C.D.C. a petition for review of suspension of license and for a temporary restraining order and injunction against the Department of Public Safety and Corrections, pursuant to LSA-R.S. 32:414 and 32:668. On the same date, the trial court extended Rucker’s temporary driving permit pending further court orders.
Following a trial on November 16 and 20, 1990, judgment was rendered in favor of defendant. A written judgment was issued on December 10, 1990, affirming the order suspending Rucker’s driver’s license for a period of 180 days for her refusal to submit to the chemical test, and vacating the order enjoining the enforcement of the suspension. The court assessed all costs against Rucker.
From this adverse judgment, Rucker sus-pensively appeals.
First, Rucker claims probable cause to stop her vehicle was lacking, as Officer Duzac was merely conducting a random stop. She claims the evidence collected as a result of the stop cannot be used to support the suspension of her driving privileges. We disagree.
Officer Duzac’s arresting officer’s affidavit informs that his reasonable grounds for stopping Rucker’s vehicle was “she almost ran another vehicle off of the road, as she drove downtown on St. Charles.” His trial testimony corroborated his affidavit, as he testified he observed Rucker’s vehicle in the left lane attempting to move into the right lane which was occupied by a fast moving cab. He said the drivers of both vehicles took evasive action to avoid an accident. Contrarily, Rucker testified that the police vehicle had not been behind her vehicle while she was traveling down St. Charles. She asserted that when the vehicles were stopped at the red light at the
*1262 intersection of Felicity and St. Charles, the police vehicle turned onto St. Charles from Felicity.
Prior to rendering its judgment, the trial court evaluated the testimony of the witnesses and made credibility determinations. Its judgment implies that it found Officer Duzac’s testimony more credible than Rucker’s. Absent manifest error, this court may not substitute its judgment for that of the trier of fact. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). Consequently, as the trial evidence presented two permissible views, the trial court’s choice between them is not clearly wrong. Id.; Arceneaux v. Dominigue, 365 So.2d 1330 (La.1978).
Officer Duzac’s affidavit and testimony establish he had probable cause to stop Rucker’s vehicle based upon her apparent violation of LSA-R.S. 32:79. Thus, her constitutional right to be free of unreasonable governmental interference was not violated and the evidence gathered thereafter was not the fruit of an illegal stop. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Second, Rucker claims the form captioned “Rights Relating to Chemical Test for Intoxication” was defaced when Officer Duzac altered the form by circling portions of it. Hence, she claims she was not adequately advised of the consequences of refusing to submit to the test. We disagree.
LSA-R.S. 32:661 provides in pertinent part as follows:
C. (1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
(a)His constitutional rights under Miranda v. Arizona;
(b) That his driving privileges can be suspended for refusing to submit to the chemical test; and
(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of .10 percent or above.
(2) In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form. If the person is unable or unwilling to sign, the officer shall certify that the arrestee was advised of the information contained in the form and that the person was unable to sign or refused to sign.
Rucker does not claim the intoxication test rights form, in its unaltered state, fails to provide the notice of rights required by LSA-R.S. 32:661(C). Rather, she claims Officer Duzac’s unilateral act of circling the points which he found important, eliminated all the other warnings on the form, including the portion which contained her Miranda rights.
We, however, find the small circles drawn on the form did not eliminate the effectiveness of the form’s warnings and statement of rights. To the contrary, in this instance, the circles merely emphasized that refusal to submit to the test shall result in the suspension of her license for a period of 180 days, while submitting to the test and having test results indicating a blood alcohol concentration of .10, shall result in the suspension of her license for a period of 90 days. Officer Duzac’s actions did not diminish the import of the warnings he left unhighlighted.
Moreover, the evidence reflects Rucker twice received full verbal notice of the contents of the rights form. Officer Duzac testified he twice advised her of these rights, once while en route to the station and a second time, when he read her the rights form at the station. Consequently, despite her self-serving testimony concerning her hearing and learning impairments, the evidence reveals she received all the warnings required by LSA-R.S. 32:661(C) *1263 before Officer Duzac accepted her refusal.[3]
Third, Rucker claims the Department of Public Health and Corrections failed to prove her refusal to take the blood test. She supports her assertion with the document entitled “Intoxilyzer 5000 Operational Check List” whereon Officer Duzac checked off the item providing “[h]ave subject blow into mouthpiece (sic) until tone stops.” She claims the trial court manifestly erred in accepting the officer’s testimony which directly contradicted the evidence on this form. We disagree.
Officer Duzac explained that when he fills out the “Intoxilyzer 5000 Operational Checklist,” which begins with the items “power on,” “press start button,” “check display panel for instructions,” et cetera, he checks off all the items as he goes down the checklist. He testified that, as a matter of form, he checks off the item providing “[h]ave subject blow into mouthpiece (sic) until tone stops,” even if the subject refuses to comply with his request.
He also testified he signed the “certification of refusal to sign” on the intoxication test rights form, certifying Rucker had been advised of all of the form’s information and she did not sign because she refused. That document was admitted into evidence along with the Intoxilyzer 5000’s printout showing Rucker’s test results were ” at 2:40 a.m. He testified Ruck-er adamantly refused to accept the tube/ mouth piece when he handed it to her. He then ran the subject test without her blowing into the mouth piece. Moreover, Ruck-er admitted she did not blow into the mouth piece when she declared at trial, “I didn’t see any machine.”
The trial court evaluated Officer Duzac’s testimony and determined it credible. Absent manifest error, this court may not substitute its judgment for the trial court’s evaluations of credibility, findings of fact and inferences of fact. Sistler v. Liberty Mut. Ins. Co., supra. Therefore, as the trial court’s apparent acceptance of the evidence showing Rucker refused to submit the chemical test is not clearly wrong, its judgment may not be disturbed on appeal.
The Department of Public Safety and Corrections met its burden of proving Rucker refused to submit to the chemical test for intoxication in violation of LSA-R.S. 32:666, 667. The Department established Officer Duzac’s probable cause to stop Rucker's vehicle; established his reasonable grounds for believing she had driven her vehicle on public highways while under the influence of alcoholic beverages, for arresting her for said offense and for requesting her to submit to the Intoxilyzer 5000 test; and established her voluntary refusal to submit to the test. The trial court, therefore, did not err in affirming the order suspending Rucker’s driving privileges for a period of 180 days.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to appellant.
AFFIRMED.
BRYAN, J. Pro Tern., dissents with reasons.

. Although Officer Duzac stopped Rucker for her reckless operation of a motor vehicle, he did not cite her for that violation.

. At trial. Officer Duzac explained that, as a matter of form, on the document entitled, "In-toxilyzer 5000 Operational Check List,” he checks off the item providing "[h]ave subject blow into mouthpiece (sic) until tone stops" when he asks the subject to blow into the mouth piece and the subject refuses to comply.

. Mr. Kleppner asked his client the following at trial:
Q. Miss Rucker, before we go much further, do you have any physical impairment of any sort that would affect your ability to hear or speak in this courtroom?
A. Well, I have some hearing problem since I was a kid, but I was in special education for four years.
Q. Why?
A. Slow abilities, slow learning.
Other questions of Rucker’s counsel, propounded to both witnesses, insinuated she was unable to hear the rights and warnings provided by Officer Duzac (or to hear his instructions during the Field Sobriety Test). However, the tape recording of the administrative hearing reveals that Rucker responded to both the court and counsels’ questions without any apparent hearing or learning disabilities. Both Rucker and Officer Duzac spoke at approximately the same volume.